# MELVILLE STRASBURGER vs. JOHN M. VOGEL.

*Negligence—Res Ipsa Loquitur—Brick Falling from Chimney of House—Presumption—Sufficiency of Evidence.*

The doctrine of *res ipsa loquitur* does not apply in an action of negligence when it appears from the plaintiff's own evidence that the injury complained of may have been caused either by the defendant's negligence or by some other act for which the defendant is not responsible.

When bricks fall from the chimney of a house and injure a passerby in the street, and there is nothing to show why they fell, a presumption arises that they fell on account of the neglect of the owner or occupant of the house to keep the chimney in repair, and the burden is then upon such owner to show a state of facts which negatives that presumption.

But when it is shown that the bricks may have been dislodged by third persons who were on the roof of the house without the knowledge or consent of the occupant, then he is not liable for the injury so caused in the absence of any evidence of his neglect to keep the premises in repair.

While the infant plaintiff was standing on a sidewalk in front of defendant's premises looking at a parade he was struck and injured by a brick which fell from the chimney of the defendant's house. Plaintiff's evidence showed that certain unknown persons had gone on the roof of the house from adjoining premises and had dislodged the bricks in the chimney by leaning against it. There was no evidence that these persons were in defendant's employ or were on the roof with his knowledge or consent, or that the chimney was out of repair. *Held*, that since there is no evidence of any neglect on the part of the defendant the plaintiff is not entitled to recover for the injury so caused, and it was error to instruct the jury that if they find that the plaintiff was struck by a brick falling from defendant's house their verdict must be for the plaintiff, unless the defendant proves that the falling of the brick was not caused by his negligence.

When the evidence produced by the plaintiff is evenly balanced as to whether the injury inflicted upon him was the result of the defendant's negligence or came from an independent cause, the jury have no right to adopt arbitrarily the theory that the defendant's negligence was the proximate cause of the injury.

Appeal from the Superior Court of Baltimore City (BAER, J.), where there was a verdict for the plaintiff for $3,000.

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*William G. Towers* (with whom was *Harry B. Wolfe* on the brief), for the appellant.

*John S. Young* and *Howard Bryant*, for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

This is an appeal from a judgment rendered by the Superior Court of Baltimore City. There are two bills of exception in the record, but, under the ruling in *Barabas* v. *Kabat*, 91 Md. 53, we need deal only with the questions raised by the second one. The declaration sets forth that the defendant, who is the appellant in this Court, was the owner and was in

possession of certain premises situated on the northeast corner of Fayette and Eutaw streets in Baltimore City, and that whilst the plaintiff, an infant then about four years of age, was standing on the pavement in front of the premises, a brick was caused and procured, through the negligence and carelessness of the defendant, to fall from the roof or top of the defendant's building, and that the brick struck the infant on the head and seriously and permanently injured him. The declaration then avers "that the injuries aforesaid were all caused through the negligence and want of due and ordinary care upon the part of the defendant, and through no fault of the plaintiff."

Under the issue joined on the plea that the defendant did not commit the wrong alleged the following, among other, undisputed facts appeared in evidence: On July 22nd, 1903, there was a parade of the Order of Elks in Baltimore. Large crowds of people assembled on the sidewalks along the route of the parade. Amongst the persons who stood on the pavement in front of the premises of the defendant on Eutaw street was the infant plaintiff with his grandmother. Whilst standing there some bricks fell from a chimney of the defendant's premises, and one of them struck the infant plaintiff on the head and fractured his skull. His injuries were serious and are perhaps permanent. He was taken to a hospital for treatment and remained there for more than five months. The premises occupied by the defendant was a four-story building which was situated on the northeast corner of Fayette and Eutaw streets. It was adjoined on the north, that is on Eutaw street, by a two-story structure, the roof of which was twenty-two feet lower than the roof of the defendant's house. The house which we are calling the defendant's house does not belong to, but is leased by him, and for the purposes of this case he will be treated as the owner of it, because under his lease his liability to the plaintiff, if any exists at all, is precisely the same that it would be if he were the owner in fee of the premises. The lower floor of the building is occupied by the defendant in carrying on the business of a druggist. The second floor was vacant. The third floor is sublet to the

firm of Eiseman Brothers, tailors.    The fourth floor was va-
cant.    Entrance to the upper floors of the building was gained
from the street through a door separate from the drug store,
and which opened into a stairway.    There was no trap-door
in the roof of the defendant's building, and to reach that roof
from the roof of the house immediately north on Eutaw street,
a ladder at least twenty-two feet long would have been re-
quired.    Quite a number of persons appear to have ascended
the stairway of the defendant's building to the third floor and
then to have stepped out of a window to the roof of the ad-
joining house on the north, to view the parade on the day in
question.    The position they occupied was therefore twenty-
two feet below the level of the defendant's roof.    There is not
a particle of evidence in the record to show that there was a
ladder on the adjoining roof, or that there were any other
means to enable the persons who went up the defendant's
stairway and out upon the adjoining roof, to get from that
roof to the roof of the defendant's building.    It was therefore
physically impossible, so far as the record discloses, for any
of those persons to have been on the roof of the defendant's
building; and consequently equally impossible for any of them
to have had any connection with the falling of the bricks from
a chimney on the defendant's roof situated twenty-two feet
higher than the place those persons occupied.    But bricks did
fall from the defendant's chimney and one of them did strike
the infant plaintiff.    For the injury thus sustained this suit
was brought.    The verdict of the jury was in favor of the
plaintiff and upon that verdict a judgment was entered against
the defendant and he has taken this appeal.

Negligence is the gravamen of the action, and the negli-
gence relied on is the alleged failure of the defendant to keep
in proper repair the chimney of his house from which the
brick which caused the injury fell.    There is no evidence
whatever in the record that in point of fact the chimney was
in a condition of disrepair.    No witness was called to show
that it needed pointing, or that it was out of plumb, or that
the mortar which fell with the bricks gave any indication of

deterioration or decay.    The single, isolated fact relied on to establish negligence was the fact that the bricks fell.    The argument is, the bricks could not have fallen if the chimney had not been out of repair; they did fall, therefore, the chimney *was* out of repair; and if out of repair the defendant was guilty of negligence in permitting it to be out of repair, because it was his duty to keep it in repair and hence that his negligence caused the injury.    This argument embodies the doctrine of *res ipsa loquitur* and the first instruction given at the instance of the plaintiff assumes that the doctrine is applicable to this case.    Now, what is that doctrine?    It is merely a short way of saying that the circumstances attendant upon an accident are themselves of such a character as to justify a jury in inferring *negligence* as the cause of that accident; and it is applicable to two classes of cases, viz, "when the relation of carrier and passenger exists and the accident arises from some abnormal condition in the department of actual transportation; second, where the injury arises from some condition or event that is in its very nature so obviously destructive of the safety of persons or property and is so tortious in its quality as, in the first instance at least, to permit no inference save that of negligence on the part of the person in control of the injurious agency."    *Benedick* v. *Potts*, 88 Md. 55.    With the first of those two classes we are not here concerned.    In the instances falling within the second of those classes an inference of negligence in lieu of direct proof of negligence, may be deduced from all the circumstances attendant upon and surrounding an accident, if the injury results from a condition or event not only in its very nature destructive of the safety of persons or property but also so wrongful in its quality as to permit, at least primarily, no inference except that of negligence on the part of the person controlling the injurious agency.    To draw an inference of negligence from only a *part* of the attendant circumstances would be both illogical and erroneous, since the sum total of them must constitute the basis of the inference; and to exclude, in the mental process of deduction, a consideration of intervening, independent and

efficient causes directly occasioning the injury and proven by a plaintiff himself and not attributable to a defendant, would be to predicate actionable negligence of a condition or event which in fact did not produce the injury and thus allow a recovery against a defendant on a ground for which he was in no way answerable. It is obvious, then, when a plaintiff relies on the doctrine of *res ipsa loquitur* it must *not* appear by his own evidence, or the evidence adduced in his own behalf, that causes for which the defendant was in no way responsible produced the injury for which damages are sought.

It is true as stated by this Court in *The State, use of Keyser,* v. *Deford,* 30 Md. 205, and repeated in *Murray* v. *McShane,* 52 Md. 225, that "in all cases where a party is in possession of fixed property, he must take care that it is so used and managed that other persons shall not be injured;" and it follows, of course, that the lack of such care is negligence and if an injury ensues therefrom an action will lie. It was the duty of the defendant to keep the chimney on his house in repair. If he neglected to do so and in consequence of *that* neglect the bricks fell therefrom and injured the plaintiff the defendant was liable. Now, if the chimney was in a condition of repair and if no independent agency intervened, the bricks would not have fallen; and if no other fact had appeared in the case reflecting upon or accounting for their falling, the mere fact that they fell was a sufficient circumstance from which a jury might have fairly concluded that their fall was due to a failure on the part of the defendant to keep the chimney in proper repair; and such a failure would be negligence. But the plaintiff did not see fit to rely on this inference of negligence. He adduced evidence to show that an intervening and independent cause operated to precipitate the bricks from the chimney to the pavement. In the testimony given by some of the plaintiff's witnesses it appeared that there were six or eight men on the roof of the defendant's house "when the parade was going by, and they leaned on the chimney * * * and in doing so I knew very well," said one of the plaintiff's witnesses, "the chimney would give away and some of the bricks fall, * * *

and then the chimney gave away, and then there was some
bricks fell and came down through the canvas awning." This
testimony was corroborated by several witnesses for the de-
fendant, and nothing appears in the record to question or gain-
say it. That several men leaned against the chimney and
thereby caused the bricks to fall from it, is a fact proved by
both sides and is undisputed and incontrovertible. Despite
the testimony which showed what was the immediate and di-
rect cause of the falling of the bricks, the trial Court in the
first instruction granted at the instance of the plaintiff told the
jury that if they should find that the defendant was in posses-
sion and occupancy of the premises, and that the plaintiff
whilst standing on Eutaw street in front of that house was
struck by a brick falling from the said house, then the verdict
must be for the plaintiff, unless the defendant by a preponder-
ance of testimony satisfied the jury that the falling of the brick
was *not* caused by the negligence of the defendant. The
instruction deliberately ignored the fact which the plaintiff had
proved that an independent agency had intervened and had
caused the bricks to fall, and permitted a recovery upon an
inference of negligence arising solely from the mere fact that
the bricks fell, *unless* the defendant satisfied the jury that the
falling of the bricks was not caused by his negligence. If the
plaintiff's case had rested exclusively upon an inference of
negligence deduced from the single fact that the bricks fell ·
without an apparent or assigned cause; and if the defendant
had, by way of answer to that theory, relied upon the inter-
vention of an independent agency, the instruction would have
been correct, because the presumption of negligence arising
from an unexplained falling of the bricks would have estab-
lished a *prima facie* case which the defendant could only have
rebutted by showing a state of facts which destroyed or nega-
tived that presumption. Between the two conflicting theories
it would have been the province of the jury to pass. But
when the plaintiff himself shows that the injury complained of
must have resulted *either* from the negligence of the defendant
*or* from an independent cause for the existence of which the

defendant is in no way responsible, he cannot be permitted to recover until he excludes the independent cause as the efficient and proximate cause of the injury; and an instruction which allows a recovery without any reference whatever to such efficient and proximate cause is essentially misleading and erroneous. *Co. Coms.* v. *Wise*, 75 Md. 38. No attempt was made to show that the bricks would have fallen if the men had not leaned against the chimney; and no inference that they would have fallen had not that agency intervened can be legitimately drawn.

It does not appear that the men who were on the roof and who by leaning against the chimney dislodged the bricks, were in the defendant's employ or were on his roof with his knowledge or consent. If they were there without his knowledge or consent he is obviously not responsible for what they did whilst they were there. We have said that it was, so far as the record discloses, a physical impossibility for the persons who stepped from the third story window of the defendant's premises to the roof of the adjoining building to get from that roof to the roof of defendant's house; and hence it is demonstrably certain that none of those people caused the bricks to fall. There was evidence adduced by the plaintiff, tending to show that when the bricks fell, the men, who by leaning against the chimney caused them to fall, ran across the defendant's roof towards Ford's Opera House and disappeared. Who these men were and where they came from is more or less a matter of conjecture; but there can be no question they did not get upon the defendant's roof through the defendant's premises. It comes, then, to the inquiry, can the defendant be held responsible for the consequences of an act done by unknown persons who were on his roof, who were not shown to be his agents or servants and who got there in some way other than through his premises, and whose momentary presence there the plaintiff failed to show was permitted by or known to the defendant at all? If that inquiry must be answered in the affirmative then every owner of real estate must be held liable for similar torts of a trespasser unless the

owner can show affirmatively that he himself has not been guilty of negligence, though a positive essential of the case of the plaintiff is that the plaintiff shall allege and prove that the defendant was guilty of negligence.

The declaration in this case distinctly averred, as it was necessary it should, that the injury sustained by the plaintiff was caused through the negligence and want of due and ordinary care upon the part of the defendant.   When, therefore, the evidence adduced to sustain that allegation reveals the fact that the negligence upon which the action is founded is attributable to some one else other than the defendant, or whilst proving the injury, fails to connect the defendant with the cause of it, the plaintiff must be non-suited.   It is equally obvious that where the evidence of the plaintiff is evenly balanced as to whether the cause for which a defendant may be responsible, or the cause for which he is not responsible produced the injury, the jury would have no right to disregard arbitrarily the proof which exculpated and to credit only that which inculpated—to adopt the theory which would subject the defendant to damages and to reject that which would exonerate him.   Now, it cannot be pretended, in the light of the evidence in this record, that the defendant is answerable for the act of the men who by leaning against the chimney caused the bricks to fall therefrom.   It was *their* act which occasioned the injury; and *their* act was proved by the plaintiff.   In addition to the error committed in granting the plaintiff's first instruction the trial Court was wrong in not having non-suited the plaintiff on the ground that the injury resulted, according to the plaintiff's proof, not from the defendant's negligence but from an independent act of strangers for whose conduct the record wholly fails to show that the defendant was in any way responsible.   The defendant's first prayer asked such an instruction and it should have been given.

We are not unmindful of the serious injuries the infant plaintiff has sustained.   The persons who occasioned them should be held responsible; but we fail to find in the record before us any legally sufficient evidence which fixes that responsibility

on the defendant.   We are consequently compelled to reverse the judgment, and as no recovery can be had a new trial will not be awarded.

> *Judgment reversed with costs above and below, without awarding a new trial.*

(Decided February 13th, 1906.)