41 A.3d 717

DISTRICT OF COLUMBIA

v.

Wayne SINGLETON, et al.

No. 77, Sept. Term, 2011.

Court of Appeals of Maryland.

March 20, 2012.

Reconsideration Denied May 18, 2012.

400

Todd S. Kim, Solicitor General (Irvin B. Nathan, Atty. Gen. for the District of Columbia, Donna M. Murasky, Deputy Solicitor General, Mary L. Wilson, Senior Asst. Atty. Gen., and David L. Hyden, Asst. Atty. Gen., Office of the Attorney General, Washington, D.C.), on brief, for Petitioner.

Gerald I. Holtz, Rockville, MD, for Respondents.

Thomas W. Farrington, Maryland Association of Justice, Inc., Kensington, MD, for Amicus Curiae brief of Maryland Association of Justice, Inc.

Argued before BELL, C.J., HARRELL, GREENE, ADKINS, BARBERA, ALAN M. WILNER, (Retired, Specially Assigned) and DALE R. CATHELL, (Retired, Specially Assigned), JJ.

HARRELL, J.

On 20 June 2008, Respondents Wayne Singleton and his eight-year-old son, Jaron, were passengers in a westbound bus on Route 50 in Prince George's County. At a certain point during that journey, the bus left the travel-portion of Route 50 and became "airborne." Singleton, asleep at that time, and Jaron, awake but non-comprehending, could not explain the

cause for the bus leaving the road, although Singleton woke-up in time to witness the bus landing in a wooded area and colliding with a tree. Respondents sued Petitioner, the District of Columbia (the District), endeavoring to prove that it was liable vicariously for the negligence of its assumed employee, the driver. Respondents produced at trial only themselves as eyewitnesses. They refrained from calling in their case-in-chief the bus driver—a listed witness for the District—or other, reasonably available witnesses mentioned in Respondents' testimony. In order to overcome the gaps in their proof of what caused the bus to leave the road, Respondents argued that res ipsa loquitur supplied an adequate inference of negligence to complete their prima facie case. The trial judge saw it differently at the close of the Respondents' case-in-chief and granted the District's motion for judgment.

Under the circumstances of this case, Respondents failed to show that they were entitled to an inference of negligence. Respondents' evidence, in context, was too speculative. Their evidence failed to demonstrate that negligence on the part of the bus driver was more probably than not the cause of the accident or to eliminate other potential causes. Although a plaintiff seeking the inferential boost from the doctrine of res ipsa does not have to eliminate all other potential causation besides the defendant's negligence or intentional act, a plaintiff must adduce evidence nonetheless that the defendant's negligence more probably than not precipitated the accident. Given the gaps in their testimony, Respondents' apparent tactical decision here to forgo calling known (or knowable) witnesses to supplement their meager evidence (or otherwise explain the absence of those witnesses), raises the inference that Respondents' access to facts that might have illuminated the cause of the accident was equal to that of the District's—a circumstance that militates against the successful invocation of res ipsa loquitur.

## I. FACTS AND PROCEDURAL HISTORY

On 8 January 2009, Respondents filed in the Circuit Court for Prince George's County a negligence action against the

District. Respondents alleged that negligent operation of the bus, owned by the District and operated by its employee, caused their injuries. The jury trial began on 19 April 2010.

Respondents testified to the following facts during their case-in-chief. On 20 June 2008, the "D.C. Parks and Rec." (presumably, the District of Columbia Department of Parks and Recreation) sponsored a day trip to Six Flags amusement park in Prince George's County, Maryland. Singleton, as one of four adult chaperones, accompanied Jaron (and his other son, Prince, six-years old) on the trip. Approximately 18 persons went on the excursion, not counting the bus driver. At 8:00 a.m., the bus departed from the District of Columbia for Six Flags in Largo. At the end of the visit to Six Flags later that day, the bus departed Largo to return Respondents and the others to the District of Columbia. The weather was sunny and the roads were dry at the time the bus left Six Flags. Singleton fell asleep at some point during the return trip while the bus was still in Prince George's County. As the bus proceeded westbound on Route 50, approaching its intersection with the Baltimore—Washington Parkway in Prince George's County, the bus left the travel-portion of the highway. Singleton, asleep, did not observe why the bus left the road. Jaron, although awake at the time, could not recall what caused the accident. Singleton awoke while the bus was airborne, observing that the bus landed in a wooded area and collided with a tree.

After the accident, Singleton walked back to Route 50 and noticed tire marks on the highway where the bus "jumped the median." Emergency responders arrived shortly at the scene. Motorists "who actually saw the accident" pulled over as well. An ambulance took Jaron to a hospital to treat cuts on an arm and his legs, and "a knot on his head." Jaron testified that he felt fine soon after the accident, despite having recurring nightmares. Singleton sought treatment from his primary-care physician for a sore shoulder, neck, and back on the evening of the accident. X-rays of Singleton revealed no broken bones. He underwent physical therapy for his shoulder, neck, and back for approximately five months.

The foregoing evidence was adduced from three witnesses during the Respondents' case-in-chief at trial, themselves and a doctor—the latter testifying about the extent of Respondents' injuries only. Respondents did not call the bus driver as a witness, although he was identified on the District's witness list for trial. Respondents failed also to summons or produce any of the other bus passengers, the emergency responders, or the motorists who witnessed the event and pulled over at the accident scene. Similarly, Respondents did not produce a copy of the police accident report or otherwise propose to re-construct the accident sequence. Respondents failed to offer a reason why they withheld these potentially material witnesses and evidence.

At the conclusion of Respondents' case, the District moved for judgment. The District argued that Respondents failed to meet their evidentiary burden of adducing sufficient evidence for a prima facie case of the District's vicarious negligence. Respondents, relying on *Andrade v. Housein,* 147 Md.App. 617, 810 A.2d 494 (2002), countered that they were entitled to an inference that the District was negligent because Respondents established that the bus left the travel-portion of the road. The trial court disagreed, explaining that there were "too many leaps of faith that a reasonable fact finder would have to take" in order find that the bus driver, more probably than not, was negligent. A defense judgment was entered as a consequence.

Respondents filed timely an appeal to the Court of Special Appeals. A panel of the Court of Special Appeals, in an unpublished opinion, reversed the Circuit Court's judgment. The panel relied primarily on *Romero v. Brenes,* 189 Md.App. 284, 984 A.2d 346 (2009). *Romero* held that, in cases where a vehicle leaves the road, "the failure to maintain control of the vehicle presents a prima facie case of negligence." *Romero,* 189 Md.App. at 291, 984 A.2d at 350. Therefore, the panel concluded, Respondents' evidence of the bus leaving the highway and crashing into a tree created a triable issue of negligence for the fact-finder. The District filed a motion for

reconsideration, which the intermediate appellate court denied.

We granted the District's petition for a writ of certiorari, 422 Md. 352, 30 A.3d 193 (2011), to consider the following (rephrased) question: Whether plaintiffs may invoke successfully res ipsa loquitur in a single-vehicle, motor tort negligence action arising from the vehicle leaving the road, where the plaintiffs were unable to recall the seminal circumstances of the accident and failed to produce other reasonably accessible and probative evidence to attempt to determine the cause of the accident.[1] For the reasons that follow, we conclude that the Circuit Court granted properly the District's motion for judgment. Accordingly, the Court of Special Appeal's judgment shall be reversed and the case remanded with directions to affirm the judgment of the Circuit Court for Prince George's County.

## II. STANDARD OF REVIEW

We review, without deference, the trial court's grant of a motion for judgment in a civil case. *Thomas v. Panco Mgmt. of Md., LLC,* 423 Md. 387, 393–94, 31 A.3d 583, 587–88 (2011) (citing *C & M Builders, LLC v. Strub,* 420 Md. 268, 290, 22 A.3d 867, 880 (2011)); Md. Rule 2–519(b)[2]. We conduct

---

1. The District, in its petition for a writ of certiorari, framed its question as

   When a passenger of a motor vehicle that left the road in an accident brings a negligence claim, then at trial presents no evidence as to the cause of the accident, as he concedes he was asleep when the vehicle left the road and did not know why or how it did so, did the trial court properly find he did not establish a prima facie case, and did the Court of Special Appeals err by reversing that decision?

2. Md. Rule 2–519(b) provides in pertinent part:

   When a defendant moves for judgment at the close of the evidence offered by the plaintiff in an action tried by the court, the court may proceed, as the trier of fact, to determine the facts and to render judgment against the plaintiff or may decline to render judgment until the close of all the evidence. When a motion for judgment is made under any other circumstances, the court shall consider all

the same analysis that a trial court should make when considering the motion for judgment. *Thomas,* 423 Md. at 394, 31 A.3d at 588. Where the defendant, in a jury trial for negligence, argues that plaintiffs' evidence is insufficient to create a triable issue, the court determines whether an inference of negligence is permissible; that is, whether the evidence demonstrates that it is more probable than not that the defendant was negligent. *Vito v. Sargis & Jones, Ltd.,* 108 Md.App. 408, 417, 672 A.2d 129, 134 (1996); Md. Rule 2–519(b). The court considers "the evidence and reasonable inferences drawn from the evidence in the light most favorable to the non-moving party." *Thomas,* 423 Md. at 393, 31 A.3d at 587.

## III. DISCUSSION

With regard to a negligence action based on a perceptually single-vehicle accident, res ipsa loquitur ("res ipsa" or "the doctrine") will be available "if the accident or injury is one which ordinarily would not occur without negligence on the part of the operator of the vehicle" and "the facts are so clear and certain that the inference [of negligence] arises naturally from them." *Knippenberg v. Windemuth,* 249 Md. 159, 161, 238 A.2d 915, 916–17 (1968). Res ipsa loquitur (literally, "the thing speaks for itself") allows generally a plaintiff to establish a prima facie case of negligence when direct evidence of the cause of the accident is unavailable and the circumstantial evidence permits the drawing of an inference by the fact-finder that the defendant's negligence was the cause. *Dover Elevator Co. v. Swann,* 334 Md. 231, 236–37, 638 A.2d 762, 765–66 (1994); *Blankenship v. Wagner,* 261 Md. 37, 41, 273 A.2d 412, 414 (1971). " 'The rule is not applied by the courts except where the facts and circumstances and the demand of justice make its application essential, depending upon the facts and circumstances in each particular case.' " *Dover,* 334 Md. at 246, 638 A.2d at 769 (quoting *Blankenship,* 261 Md. at 41, 273 A.2d at 414). Nonetheless, the plaintiff retains his or her burden to prove the defendant's negligence.

---

evidence and inferences in the light most favorable to the party against whom the motion is made.

*Dover,* 334 Md. at 236, 638 A.2d at 765. A defendant confronted properly with a res ipsa inference is obliged to go forward with his case, shouldering what has been described as the "risk of non-persuasion." *Hickory Transfer Co. v. Nezbed,* 202 Md. 253, 262, 96 A.2d 241, 245 (1953). In effect, res ipsa loquitur allows the plaintiff to present the question of negligence to the fact-finder, notwithstanding a lack of direct evidence bearing on causation. *Dover,* 334 Md. at 236, 638 A.2d at 765 (citing *Munzert v. Am. Stores,* 232 Md. 97, 103, 192 A.2d 59, 62 (1963)).

To invoke successfully the doctrine, the plaintiff must establish that the accident was "(1) of a kind that does not ordinarily occur absent negligence, (2) that was caused by an instrumentality exclusively in the defendant's control, and (3) that was not caused by an act or omission of the plaintiff." *Holzhauer v. Saks & Co.,* 346 Md. 328, 335–36, 697 A.2d 89, 93 (1997) (citing *Dover,* 334 Md. at 236–37, 638 A.2d at 765). Additionally, although not an indispensable requirement of res ipsa, "one of the circumstances which calls for the application of the doctrine is when the facts surrounding the accident are more within the knowledge of the defendant than within the knowledge of the plaintiff." *Johnson v. Jackson,* 245 Md. 589, 594–95, 226 A.2d 883, 886 (1967); *see also Coastal Tank Lines v. Carroll,* 205 Md. 137, 144–45, 106 A.2d 98, 100–01 (1954); *Vito,* 108 Md.App. at 431, 672 A.2d at 141.

To satisfy the exclusive-control requirement, the evidence adduced must demonstrate that no third-party or other intervening force contributed more probably than not to the accident. *Holzhauer,* 346 Md. at 337, 697 A.2d at 93; *Johnson,* 245 Md. at 593, 226 A.2d at 885. We iterated in *Holzhauer* that a res ipsa inference of the defendant's negligence is not permissible where an intervening force may have precipitated the accident. *Holzhauer,* 346 Md. at 337, 697 A.2d at 93. The existence of that potentiality " 'weakens the probability that the injury is attributable to the defendant's [negligent] act or omission.' " *Holzhauer,* 346 Md. at 337, 697 A.2d at 93 (quoting *Lee v. Hous. Auth. of Balt.,* 203 Md. 453, 461, 101 A.2d 832, 836 (1954)). In proving the absence of

other, more-probable causes of the accident, the plaintiff "is not required to exclude every possible cause for [his] injuries other than that of negligence; [he] is only required to show a greater likelihood that [his] injury was caused by the defendant's negligence than by some other cause." *Norris v. Ross Stores, Inc.*, 159 Md.App. 323, 331, 859 A.2d 266, 271 (2004); *see also Leikach v. Royal Crown Bottling Co.*, 261 Md. 541, 548–50, 276 A.2d 81, 84–85 (1971).

In sum, res ipsa loquitur requires the conclusion that, "by relying on common sense and experience, the incident more probably resulted from the defendant's negligence rather than from some other cause." *Norris*, 159 Md.App. at 331, 859 A.2d at 271.

### A.

Respondents failed to show that negligence attributable to the District more probably caused the accident than other potential causes.[3] This deficiency stems from their inability to recount personally the events leading to the bus leaving the travel-portion of Route 50 and their apparent decision not to adduce other reasonably available evidence that could have cast light on that inquiry (e.g., testimony from the bus driver, other bus passengers, motorists who witnessed the accident, emergency responders, or possibly the police accident report, if admissible in whole or in part). Respondents' attorney stated during oral argument before this Court that he spoke with witnesses, indicating that obviously some of these witnesses were known and accessible. Nonetheless, Respondents envisage that the nature of the accident entitled them merely to prove that the bus left the road and rest, taking advantage of res ipsa loquitur to plug the hole in the doughnut. Their

---

**3.** Amicus curiae, the Maryland Association of Justice, contended in its brief that the District conceded the exclusive-control element of res ipsa loquitur by not renewing its argument before this Court that Respondents failed to adduce evidence that the District owned and operated the bus. That contention, however, dealt with whether the District owned the bus for purposes of liability, an ownership/control issue distinct from res ipsa loquitur.

position, however, belies the doctrine's requirement that plaintiffs' evidence must show that the defendant's negligence, and not a third-party causation or force, more probably than not caused the accident, given the particular circumstances of the accident.

In *Hanes v. State ex rel. Lamm,* we said that "[w]here a motor vehicle leaves the roadway *without a prior collision* and thereby causes injury or damage, the courts, as a general rule, are prepared to draw an inference of negligence from the occurrence, assuming, of course, that all the other conditions of applicability are met." 236 Md. 28, 33, 202 A.2d 364, 366 (1964) (emphasis added) (quoting C.T. Drechsler, *Applicability of Res Ipsa Loquitur Doctrine Where Motor Vehicle Leaves Road,* 79 A.L.R.2d 6, at 18 (1961)). Requiring plaintiffs to show that a motor vehicle left the roadway, without an antecedent collision, is not an absolute threshold condition for applying res ipsa loquitur. Rather, it represents one conception of the exclusive-control element of res ipsa whereby plaintiffs must demonstrate that the defendant's negligence, and not an intervening act such as another vehicle, more likely than not caused the accident. *See Blankenship,* 261 Md. at 42, 273 A.2d at 415; *Norris,* 159 Md.App. at 331, 859 A.2d at 271; *see also Singer Transfer Co. v. Buck Glass Co.,* 169 Md. 358, 362, 181 A. 672, 673 (1935) (concluding an inference of negligence was appropriate where evidence showed that another vehicle could not have caused the accident); *Am. Express Co. v. Terry,* 126 Md. 254, 261, 94 A. 1026, 1029 (1915) ("The plaintiff's evidence was legally sufficient to raise a prima facie presumption of negligence.... The evidence precludes the theory that the truck was started because of the intervening act of some third party.").

The cases upon which Respondents rely support implicitly the above principle. For instance, in *Romero v. Brenes,* an automobile left the road and killed the driver and the front-seat passenger.[4] 189 Md.App. 284, 285, 984 A.2d 346, 347

---

4. In *Romero,* a backseat passenger survived the car accident, but suffered serious injuries. For reasons not discussed in the opinion,

(2009). The parents of the front-seat passenger sued the estate of the driver, claiming negligence. *Romero,* 189 Md. App. at 285, 984 A.2d at 347. The *Romero* Court concluded that the plaintiffs'/parents' ample evidence permitted an inference that the deceased driver was negligent. 189 Md.App. at 299, 984 A.2d at 354. Testimony from a witnessing motorist established that the driving conditions were dry, the road was straight, the car spun out, another vehicle did not contribute to the accident, no pedestrian or animal blocked the road, the car exceeded the speed limit by 10 to 20 miles per hour, and the force of impact indicated excessive speed. *Romero,* 189 Md.App. at 287–80, 299, 984 A.2d at 348–49, 354. Thus, the circumstantial evidence indicated that the driver was negligent more probably than not. Other res ipsa loquitur cases relied upon by Respondents indicate also that, in order to invoke res ipsa, circumstantial evidence must demonstrate that the defendant's negligence more probably than not caused the accident. *Knippenberg,* 249 Md. at 160–61, 238 A.2d at 916 (discussing testimony of driver of an unattended runaway car that struck a house, where the driver established that he parked the car properly on a steep incline and a mechanic had checked recently the car's brakes); *Andrade v. Housein,* 147 Md.App. 617, 623, 810 A.2d 494, 498 (2002) (stating that the defendant's violation of Maryland Code, Transportation Article sections 21–310 ("Following too closely") and 21–901.1(b) ("Negligent driving") warranted an "inference or presumption" of negligence).

We are persuaded also by the Supreme Court of Connecticut's case of *Chasse v. Albert,* where a sleeping passenger in a vehicle that left the road sued, on a negligence theory, the administratrix of the deceased driver's estate. 147 Conn. 680, 166 A.2d 148, 149 (1960). The only evidence regarding the accident came from another driver, who was 150–yards away and uninvolved in the accident. *Id.* The Supreme Court of Connecticut affirmed the trial court's directed verdict against

---

plaintiffs did not call the surviving passenger to testify. *Romero v. Brenes,* 189 Md.App. 284, 289, 984 A.2d 346, 349 (2009).

the passenger, noting that the paucity of evidence did not warrant an inference of negligence: "[M]any possibilities, other than negligence on the part of the operator, existed as to the cause of the accident here. The doctrine of res ipsa loquitur was not available to the plaintiff in this situation." *Chasse,* 166 A.2d at 150.

■■■ Here, Respondents' perhaps unnecessarily bare-bones case-in-chief failed to eliminate sufficiently other causes of the accident, and failed to evince that the bus driver's negligence was the most probable causative factor. Respondents point out that their testimony established that the driving conditions were dry and that there were tire marks on Route 50 where the bus "jumped the median." This evidence, however, is ambiguous. Tire marks do not demonstrate necessarily that the speed of the bus was excessive relative to the ambient physical conditions or even the posted limit on that section of the road (there was no evidence of the latter or the speed of the bus as it crossed the median). "Tire-skid" marks, if that is what Singleton observed, could indicate also a sudden emergency, such as a tire blowout, avoiding another vehicle or other moving obstacle, an unforeseen medical emergency, or a mechanical failure unrelated to inadequate maintenance. Although plaintiffs are not required to exclude all other potential causes of the accident, Respondents' limited evidence here established only that "the probabilities are at best evenly divided between negligence and its absence," in which case "it becomes the duty of a court to direct a jury that there is no sufficient proof." *Leikach,* 261 Md. at 549, 276 A.2d at 85. Therefore, the trial court granted properly the District's motion for judgment.

Despite the gaps in their evidence, Respondents point to *Hickory Transfer Company* for the proposition that res ipsa loquitur applies where a plaintiff shows merely the occurrence of a vehicle leaving the highway autonomously and rests:

When a vehicle leaves a highway and crashes into a building, or a pedestrian on a sidewalk, the injured party may show the happening of the event and rest. In lieu of direct

proof of negligence he may rely on the inference of negligence to be deduced from all the circumstances. In such a case it is said "the thing speaks for itself," or res ipsa loquitur.

202 Md. at 262, 96 A.2d at 245 (emphasis removed). As observed previously by this Court, this statement is dictum. *Coastal Tank Lines*, 205 Md. at 144, 106 A.2d at 100.[5] Even if this reasoning had stronger precedential value, Respondents' limited evidence failed to show "the happening" of the accident because of their inability to recount events precipitating the bus leaving the road. Moreover, Respondents interpret *Hickory Transfer Company* too narrowly and without reference to *Hanes*, which we decided subsequent to *Hickory Transfer Company*, and other illustrative cases, such as *Leikach* and *Norris*.

Respondents' evidence failed to evince that the District's bus driver's negligence more probably than not caused the bus to leave the road because other potential causes were not explored or excluded sufficiently. Thus, we cannot say their evidence is "so clear and certain that the inference [of negligence] arises naturally." *Knippenberg*, 249 Md. at 161, 238 A.2d at 916–17.

## B.

Our conclusion that res ipsa loquitur is inapplicable in the present case is buoyed by Respondents' apparent tactical decision to avoid reasonably available witnesses. Application

---

**5.** As *Coastal Tank Lines* notes, the statement from *Hickory Transfer Company* was applied in *Shirks Motor Express v. Oxenham*, 204 Md. 626, 106 A.2d 46 (1954). Respondents relied upon *Shirks Motor Express*, as well as *Fields v. Morgan*, 39 Md.App. 82, 382 A.2d 1099 (1978), in their brief. Both cases, however, are inapposite because they discussed whether conflicting evidence about the cause of the accident precluded the grant or denial of a directed verdict, not whether there was sufficient evidence to warrant an inference of negligence. *See Romero*, 189 Md.App. at 295, 984 A.2d at 352 (*"Fields* stands for the proposition that a jury may find negligence of a driver, proximately causing injury, when the vehicle is driven off the road, if the jury does not believe the driver's non-negligent explanation of the accident.").

of res ipsa loquitur is justified, in some circumstances, by a defendant's superior access to identification of the facts surrounding the accident. *Johnson,* 245 Md. at 594–95, 226 A.2d at 885–86. Failing to produce reasonably available and likely probative witnesses, where substantive and direct evidence is otherwise lacking, leads to the inference that the facts surrounding the happening of the accident were equally accessible to the plaintiff and the defendant. *Johnson,* 245 Md. at 594–95, 226 A.2d at 885–86. Res ipsa loquitur should not be available in such cases.

In *Johnson,* the defendant's unattended Buick drifted down an alley and struck the plaintiff. 245 Md. at 591, 226 A.2d at 884. Hoping to rely on res ipsa loquitur to get the issue of negligence to the fact-finder, only the plaintiff testified and then only primarily that he was injured by the defendant's vehicle. *Johnson,* 245 Md. at 591–92, 226 A.2d at 884. That meager evidence, not unlike the present case, failed to establish the attendant circumstances, such as how the Buick was parked and whether any third parties interacted with the Buick prior to the accident. *Johnson,* 245 Md. at 591, 226 A.2d at 884. Also similar to the present case, the plaintiff's testimony in *Johnson* established that there were eyewitnesses, and his failure to attempt to produce these witnesses proved his undoing on appeal to this Court. 245 Md. at 592, 226 A.2d at 884. We noted that " '[t]he justice of the rule permitting proof of negligence by circumstantial evidence is found in the circumstances that the principal evidence of the true cause of the accident is accessible to the defendant, but inaccessible to the victim of the accident.' " *Johnson,* 245 Md. at 595–96, 226 A.2d at 886 (quoting *Coastal Tank Lines,* 205 Md. at 144–45, 106 A.2d at 101). We concluded ultimately that plaintiff's limited evidence, despite the known existence of eyewitnesses, gave rise to the inference that the information about the accident was equally accessible to both parties, negating the "justice" of invoking res ipsa loquitur. *Johnson,* 245 Md. at 594–96, 226 A.2d at 885–87.

Here, Respondents failed to produce apparently reasonably accessible witnesses [6] that might have supplemented their limited evidence with additional direct or circumstantial evidence of negligence. Although it is understandable that Respondents may have been loathe to call the bus driver, a listed defense witness and inferentially hostile to Respondents' case, Respondents' testimony established the existence of other potential witnesses: the other passengers on the bus, motorists "who actually saw the accident" and pulled over to help the accident victims, and emergency responders; nor did Respondents offer a copy of the police accident report. It may be inferred that Respondents had equal access as the defendant to the facts surrounding the accident. *Johnson*, 245 Md. at 594–95, 226 A.2d at 885–86. Therefore, Respondents may not rely upon res ipsa loquitur to satisfy their burden to adduce a prima facie case of negligence and thus defeat the District's motion for judgment.[7]

---

**6.** During oral argument before this Court, Respondents attempted to excuse the absence from their case-in-chief of these witnesses because pre-trial interviews of them revealed that they did not know the cause of the accident. Substantiation of this claim, however, is not reflected in the factual record of the case.

**7.** Though not briefed by the parties, we observe that the failure of a plaintiff in a negligence action to produce reasonably available and explanatory evidence about the accident to supplement his/her deficient evidence may preclude, in and of itself, plaintiffs from invoking res ipsa loquitur. *See McDonald v. Smitty's Super Valu*, 157 Ariz. 316, 757 P.2d 120, 125 (Ariz.Ct.App.1988) ("Invocation of res ipsa loquitur is no substitute for reasonable investigation and discovery. The doctrine may benefit a plaintiff unable directly to prove negligence; it does not relieve a plaintiff too uninquisitive to undertake available proof."); *McCann v. State Farm Mut. Auto. Ins. Co.*, 483 So.2d 205, 210 (La.Ct. App.1986) ("Their failure [to produce the most knowledgeable witness] cannot, in our view, serve to permit the invocation of res ipsa loquitur or otherwise escape the burden placed upon them of establishing the defendant's negligent conduct as the cause of their injuries."); *Boyd v. Kistler*, 270 N.C. 744, 155 S.E.2d 208, 210 (1967) ("By investigation, the plaintiff surely could have obtained evidence as to when and how the injury occurred and who caused it. No doubt the plaintiff's able counsel knew of their right to make inquiry by adverse examination of witnesses and the examination of documents."); Dan B. Dobbs et al., *The Law of Torts* § 176, at 584 (2nd ed. 2011); Robert G. Byrd, *Proof of*

Our Court of Special Appeals brethren suggest, however, that a plaintiff's inferior access to the facts of the accident is not a " 'hard and fast' " res ipsa requirement, and that a plaintiff can proceed to the jury without proving this quasi-element. *Vito*, 108 Md.App. at 431, 672 A.2d at 140–41 (quoting Fowler V. Harper et al., *The Law of Torts*, § 19.9, at 62 (2nd ed. 1986)). Nonetheless, this factor may serve as a makeweight in cases where the inference of negligence failed to materialize in any event. W. Page Keeton et al., *Prosser and Keeton on Torts*, § 39, at 254 (5th ed. 1984). We concluded, *supra*, that the presented evidence was too ambiguous to raise even an inference of negligence. Respondents' inferred equal access to a fuller presentation of the facts of the accident cements our conclusion that the Circuit Court granted properly the District's motion for judgment.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENTS.**

---

*Negligence in North Carolina, Part I: Res Ipsa Loquitur,* 48 N.C. L.Rev. 455, 456 (1970).